### In re KROH BROTHERS DEVELOPMENT CO., Debtor.

**Kroh Operating Limited Partnership, Plaintiff,**

v.

**Great Payback Office, McMahan Equity Real Estate Fund–1, Inc., and AMB Property Corp., Defendants.**

Bankruptcy No. 87–00640.
Adversary No. 02–4043–JWV.

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

Sept. 23, 2002.

Cory Lipoff, Winston & Strawn, Chicago, IL, for debtor.

Edward Schmitt, Kansas City, MO, trustee.

Berry F. Laws, III, Kansas City, MO, trustee.

Thomas S. Kiriakos, Mayer, Brown & Platt, Chicago, IL, for Unsecured Creditors Committee.

Karen M. Gleason, Norris E. Greer, Richard M. Paul, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, for plaintiff.

Robert D. Clark, Colorado Attorney General's Office, Office of Unclaimed Property, Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

The controversy before the Court in this Adversary Proceeding involves the claim of the Kroh Operating Limited Partnership to $626,855.87 that is being held by the Unclaimed Property Division of the Colorado Department of the Treasury pursuant to that state's unclaimed property statutes. This dispute is—hopefully—one of the last matters that must be resolved before a final distribution of funds can be made in the long-running Chapter 11 bankruptcy proceedings of Kroh Brothers Development Co. ("Kroh Brothers"), a case that was filed in this Court in 1987.

Kroh Operating Limited Partnership ("Plaintiff"), the entity that was established under the Kroh Brothers Plan of Reorganization [1] to liquidate the assets of the bankruptcy estate, filed this Adversary Proceeding on February 15, 2002, against the Unclaimed Property Division of the Colorado Department of the Treasury ("Colorado") [2] and two other parties that

---

1. On March 8, 1988, the Bankruptcy Court entered an order confirming the Second Amended Joint Plan of Reorganization ("Confirmation Order") (Document # 1361). The Confirmation Order created Kroh Operating Limited Partnership ("KOLP") for the purposes set out in the Plan, primarily to oversee

an orderly liquidation of the business as the representative of the estate pursuant to 11 U.S.C. § 1123(a)(5). On that basis, KOLP is the proper entity to bring this action.

2. The Plaintiff called this Defendant the "Great Payback Office," which has a nice ring to it but which the Colorado Attorney General

might have a claim to the funds, McMahan Equity Real Estate Fund–1, Inc., ("McMahan") and AMB Property Corp. ("AMB"). A hearing was held at the United States Courthouse in Kansas City, Missouri, on August 28, 2002, and the Court took the matter under advisement. The Court has reviewed all of the exhibits admitted into evidence, has reviewed the arguments of counsel and the relevant case law, and is now prepared to rule.[3]

For the reasons set out below, the Court has determined that the $626,855.87 being held by Colorado is property of the Kroh Brothers bankruptcy estate and that the Kroh Operating Limited Partnership is entitled to claim the funds for inclusion in the estate, for eventual distribution to the creditors of the estate.[4]

## FACTUAL BACKGROUND

Piecing together the factual background of this controversy has not been easy for the parties or the Court because virtually all of the essential records involved have been destroyed pursuant to Court orders [5] and the persons with knowledge of the facts are generally no longer available to provide evidence. However, the essential facts can be ascertained for reaching an appropriate decision.

On October 10, 1985, Iowa National Mutual Insurance Company ("Iowa National"), headquartered in Cedar Rapids, Iowa, was declared insolvent and was placed in receivership, with the Commissioner of Insurance named as the Liquidator of its assets and liabilities.[6] Pursuant to Iowa law, all creditors of Iowa National were sent a notice to file claims with the Liquidator. At some point, Kroh Brothers filed a proof of claim with the Liquidator for the $626,855.87 in controversy. Because the Liquidator's records have been destroyed, it is not known exactly how the proof of claim was structured, but a solid inference may be drawn from the evidence presented that the claim was filed by Kroh Brothers on behalf of or as the agent for the McMahan entity, McMahan Equity Real Estate Fund–1, Inc. Nor is it possible to ascertain the basis for the payment that was made by the Liquidator. Colorado has characterized it as an insurance premium refund, apparently based on inquiries that were made by staff in the Unclaimed Property Division. However, the attorney for the Liquidator stated in a letter to the attorney for the Plaintiff that he doubted the payment was for an insurance premium refund because it was classified in the Liquidator's report along with the general creditor claims.

states is not the correct name for the Unclaimed Property Division. The Court will generally refer to this Defendant as "Colorado."

3. This Court has jurisdiction in this matter pursuant to 28 U.S.C. § § 1334 and 157(a). This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A), (E), and (O).

4. This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

5. The Polk County (Iowa) District Court entered an Order on February 25, 1999, authorizing the Liquidator to destroy the liquidation records of Iowa National Mutual Insurance Company. This Court entered an Order on December 22, 1999, authorizing the Plaintiff to destroy many of the business records of Kroh Brothers rather than continue to incur the expense of storing a very large volume of records.

6. State of Iowa ex rel. Bruce W. Foudree, Commissioner of Insurance of the State of Iowa v. Iowa National Mutual Insurance Company, Equity Case No. CE 23–13565, Polk County District Court. The case was subsequently retitled State of Iowa ex rel. Therese M. Vaughan, Commissioner of Insurance of the State of Iowa v. Iowa National Mutual Insurance Company.

In any event, the Liquidator apparently processed the claim and found it to be valid, and on September 5, 1995, on request of the Liquidator, the District Court entered an order authorizing and directing the Liquidator to pay the general creditor claims, of which the Kroh Brothers claim was one.[7] On September 7, 1995, just two days later, the Liquidator mailed a check to Kroh Brothers at an office address in Englewood, Colorado, but because Kroh Brothers had moved from that location, the check went unclaimed and was returned to the Liquidator. Once again, because the records have been destroyed, it is not possible to determine how the check was made payable. However, in a report sent to Colorado by Thomas G. Wrigley, the Chief Deputy Liquidator, on August 29, 1996—when these and other unclaimed funds were turned over to Colorado—the unclaimed payment was listed as: "McMahan Equity Real Estat % Kroh Brothers Develop Co, 5690 DTC Blvd Ste 200E, Englewood, CO 80111." [8] (sic) It is this entry—and particularly the use of the percentage sign (%) on the 1996 report—that has led to the present controversy.

Between the time Iowa National was placed in liquidation (1985) and the time the check was mailed (1995), Kroh Brothers filed a Chapter 11 bankruptcy petition in this Court on February 7, 1987. The claim against Iowa National was not listed as an asset of the Kroh Brothers estate.[9] Quite obviously, the matter escaped the attention of the individuals carrying out

the liquidation of the Kroh Brothers bankruptcy estate for several years. But then, in March 2001, I.. I. Ozar, the managing general partner of Ozar Limited Partnership, the General Partner of Kroh Operating Limited Partnership, filed a claim with the Colorado Department of the Treasury laying claim to the $626,855.87 being held by the Unclaimed Property Division. Colorado refused to pay the money over to the Plaintiff, and this Adversary Proceeding followed.

In its Complaint, the Plaintiff named as defendants—in addition to Colorado—McMahan Equity Real Estate Fund–1, Inc., the last officers and directors of McMahan, and AMB Property Corporation. According to the Plaintiff, it joined the last officers and directors of McMahan and AMB as defendants because it learned that McMahan had been dissolved and that its officers and directors had formed AMB. Shortly before the hearing was held in this Court, a Stipulation of Judgment was filed in which McMahan, its officers and directors, and AMB relinquished all claims to the $626,855.87. (Stipulation of Judgment, Document # 19).

## DISCUSSION

Section 541(a) of the Bankruptcy Code [10] provides that the filing of a bankruptcy case creates an estate, and that all legal or equitable interests of the debtor in property as of the commencement of the case are included in that estate.[11] Counsel

---

7. The claim will be referred to as "the Kroh Brothers claim" because it clearly appears that Kroh Brothers was the "person" filing the claim.

8. As a point of clarification, the Court found this address listed in the bankruptcy schedules as a regional office of Kroh Brothers Development. The office was closed on December 13, 1986. (Document # 328, Ex. I.d., p.1).

9. Failure to list this claim is certainly understandable; the schedules in this case consist of two bound volumes (approximately 1,000 pages). (Documents # 328 and # 329).

10. Title 11, United States Code.

11. Section 541(a)(1) of the Bankruptcy code provides: (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of

for the Plaintiff argues that the $626,855.87 held by Colorado is property of the Kroh Brothers bankruptcy estate pursuant to § 541(a) because Kroh Brothers' claim for those funds was approved by the Liquidator and the District Court in the Iowa National receivership proceeding and because the other potential claimant to the funds, namely McMahan, has disclaimed any interest in the funds.

Colorado, on the other hand, argues that its Unclaimed Property Division, as an "administrative adjudicator," has made a determination that the Plaintiff has not produced sufficient evidence to prove an ownership interest in the funds, and therefore the funds should remain in the custody of the Colorado Department of the Treasury. Counsel for Colorado further argues that, because Colorado had jurisdiction to make that initial determination, this Court does not have jurisdiction—or, perhaps, should not exercise its jurisdiction—to require Colorado to pay the funds over to the Kroh Brothers bankruptcy estate. Finally, Colorado argues that the Plaintiff should not receive the funds simply because it is "the last man standing."

This Court believes that the Plaintiff has produced sufficient evidence to show that it is lawfully entitled to receive the funds in Colorado's custody, to the exclusion of all other real or potential claimants, and therefore the funds should be turned over to the Plaintiff pursuant to the provisions of Sections 542(a) and 543(b)(1) of the Bankruptcy Code.[12] Primarily, this Court's conclusion is based on the fact that the Liquidator in the Iowa National receivership proceedings determined that the claim was valid and should be paid, that the Polk County District Court approved the payment to Kroh Brothers, and that the payment was to be sent to Kroh Brothers at its address in Englewood, Colorado. This Court believes that Colorado should now do what the Liquidator tried to do, i.e., pay the money to Kroh Brothers.

After the Iowa Commissioner of Insurance initiated the receivership proceedings against Iowa National, and after the Commissioner had been appointed by the Polk County District Court as the Liquidator, all creditors of Iowa National were notified of the opportunity to file claims against the company's assets. Kroh Brothers filed such a claim, apparently on behalf of McMahan, and that claim was allowed by the Liquidator as a Class 4 creditor claim.[13] The Liquidator eventually applied

all the following property, wherever located and my whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1).

**12.** Section 542(a) of the Bankruptcy Code states as follows:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the

value of such property, unless such property is of inconsequential value or benefit to the estate. 11 U.S.C. § 542(a).

Section 543 (b)(1) of the Bankruptcy Code provides:

(b) A custodian shall—

(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case ... 11 U.S.C. § 543(b)(1).

**13.** As previously noted, it is not clear what the payment was for, whether for an unearned premium refund, a general creditor claim, or something else, such as a property damage

to the Polk County District Court for approval to pay the Kroh Brothers claim, along with numerous others, and that approval was granted by the Court. Subsequently, the Liquidator issued a check and mailed it to the Kroh Brothers offices in Englewood, Colorado. However, the check was returned because Kroh Brothers no longer had its offices at the Englewood address. In fact, Kroh Brothers had filed a Chapter 11 bankruptcy and gone out of business approximately eight years before the check was mailed by the Liquidator.

The Iowa statutes set out strict requirements for the filing and allowance of a claim in an insurance company receivership. Section 507C.36 requires, among other things, that the claim include the particulars of the claim, the identity and amount of security for the claim, the payments that have been made, and a statement that the claim is justly owing and that there is no setoff, counterclaim, or defense to the claim. The statute further provides that the Liquidator may, at any time, request the claimant to present supplemental information or evidence to support a claim, even including the taking of testimony under oath and the production of evidence by deposition or affidavit. IOWA CODE § 507C.36.3 (1985). After the Liquidator has reviewed and investigated the claims, he may negotiate or compromise them. He then makes a recommendation to the court for the payment of the claims, and the court may approve, disapprove, or modify them. IOWA CODE § 507C.43 (1985).

In this case, the Liquidator for Iowa National obviously received a proof of claim filed by Kroh Brothers with a return address in Englewood, Colorado. (¶ 12, Affidavit of John K. Vernon, one of the attorneys for the Liquidator.) More importantly, the Liquidator approved the claim, obtained court approval for its payment, and issued a check for $626,855.87 in payment of the claim. Based on the procedures mandated by Iowa law, this Court does not believe that it is in any position to question the Liquidator's determination that the claim was valid and should be paid. Nor does it believe Colorado is in any position to second-guess the Liquidator's determination. Deference should be given to the Liquidator's determination and the Polk County District Court's Order approving payment of the claim, because the Liquidator presumably had all of the information he needed to determine the validity of the claim. If he was dissatisfied with the information presented with the claim, he had broad authority to obtain additional information and evidence.

Despite the procedures followed in the Iowa receivership proceeding, Colorado maintains that it has made an "administrative determination" that the money should not be paid over to the Plaintiff here, because the Plaintiff has not been able to produce sufficient evidence to show that it is entitled to receive the money. The fallacy in this position is that the Liquidator in the Iowa proceeding, with the complete proof of claim before him, had already determined that the money should be sent to Kroh Brothers. There is no justification for the Colorado Department of the Treasury—and, more likely, its attorneys in the Attorney General's office—to substitute its judgment for the judgment of the Iowa National liquidator. This is particu-

---

claim. According to Section 507C.42, Iowa Code (1985), Class 4—where the Liquidator placed the Kroh Brothers claim—consists of claims of general creditors, and nonassessable policies for unearned premium or other pre-

mium refunds. In any event, it is not critical to this Court's ruling whether the claim was for an unearned premium refund or a payment for property damage or for something else.

larly true when Colorado has never seen the proof of claim or the supporting documentation (if any) for the claim; all it has received is a one-page claim (Colorado Ex. Q) submitted by the Kroh Brothers bankruptcy estate asking that the money be paid to it, as determined by the Liquidator. There is no logical or justifiable reason for Colorado to refuse to do what the Iowa National liquidator determined should be done—that is, send the $626,855.87 to Kroh Brothers. It is this Court's duty to give full faith and credit to the determination made in the Iowa Court.[14] This is not a complex state administrative procedure that requires special deference. Colorado is improperly attempting to relitigate the same issue that has already been decided in the Iowa receivership proceedings, when all that is really necessary to be determined is whether the Kroh Brothers that is now claiming the funds is the same Kroh Brothers to which the Liquidator sent his check in Englewood, Colorado. And on that issue, there is no dispute. For that reason, the Court's obvious duty is to uphold the ruling of the Iowa state court, not the subsequent and contrary administrative finding in Colorado.

Counsel for Colorado further argues that Kroh Brothers is not entitled to the funds because the money was sent by the Liquidator to "McMahan Equity Real Estate" *in care of* Kroh Brothers at its Englewood, Colorado, address. This argument is based on the report that was sent to Colorado by Thomas G. Wrigley, the Chief Deputy Liquidator, on August 29, 1996, in which he listed the unclaimed payment as: "McMahan Equity Real Estat % Kroh Brothers Develop Co, 5690 DTC Blvd Ste 200E, Englewood, CO 80111." (sic) Counsel places particular emphasis on the use of the percentage sign (%) in the entry and argues that that percentage sign—which counsel interprets to mean *in care of*—indicates that Kroh Brothers had no interest in the money and therefore is not entitled to receive it. The Court agrees with Colorado that the percentage sign probably was intended to mean *in care of,* but the rest of Colorado's argument assumes too much. Colorado seems to assume that, because the money was sent to McMahan *in care of* Kroh Brothers, Kroh Brothers has no legal or equitable interest in the funds. But Colorado has no way of knowing what arrangement or relationship existed between McMahan and Kroh Brothers, why Kroh Brothers filed the proof of claim in the Iowa National receivership proceedings, or why the payment was to be sent to McMahan in care of Kroh Brothers. To the contrary, however, the Liquidator in Iowa *did have* all of that information, and he was satisfied that the check should be mailed to McMahan in care of Kroh Brothers. Colorado should not now be permitted to second guess the Liquidator in that regard.

Additionally, Colorado does not know—nor does this Court or presumably anyone else know—who the payees were on the check issued in 1995 by the Liquidator. In his affidavit, John K. Vernon, one of the attorneys for the Liquidator, states that he does not know how the check was made payable, "but it would have included one or both of McMahan Equity Real and/or Kroh Brothers Develop. Co., as payees." (sic) (Vernon affidavit, ¶ 12) Since all of the

---

14. 28 U.S.C. § 1738 provides in pertinent part:

> The records and judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken.
>
> 28 U.S.C. § 1738.

records of the Liquidator have been destroyed, apparently no one will ever know how the check was issued. It could well be that Kroh Brothers was a named payee on the check, but that is an issue to be resolved between McMahan and Kroh Brothers. That is not a determination that Colorado or this Court needs to make, because the Liquidator in Iowa has already made that determination.

According to the deposition testimony of Patty Fern White, the director of Colorado's Unclaimed Property program, it appears that Colorado declined to turn the funds over to the Plaintiff because the Plaintiff was unable to produce documentation showing some kind of affiliation between Kroh Brothers and McMahan. (White deposition, p. 33) Under the circumstances, this places an almost impossible burden on the Plaintiff, because the records of both Kroh Brothers and the Liquidator have been destroyed pursuant to Court order and the McMahan entity has been dissolved. But, once again, this inquiry is unnecessary because the Liqui-

dator in Iowa has already made that determination and issued his check. And, equally important, McMahan has disclaimed an interest in the funds[15] and both McMahan and AMB have stipulated that they do not claim an interest in the funds and have stipulated to a judgment being entered in favor of Kroh Brothers in this proceeding.[16] (Document #19). Perhaps Colorado has lost sight of its proper role here, particularly in view of the fact that the rightful recipient of the money has already been determined by the Iowa state court. The Department of the Treasury is custodian of the funds and its fiduciary duty runs to the rightful owners of those funds—not to the State of Colorado. Under Colorado law, "the state assumes custody and responsibility for the safekeeping of the property." COLO. REV. STAT. § 38–13–113(1) (2001).

If this Court were to accept Colorado's arguments, it is almost certain that the $626,855.87 being held by Colorado would never be distributed.[17] There are only two possible claimants for the money—McMa-

**15.** "Having found no evidence that McMahan Equity Fund–1, Inc. has an interest in the funds that are the subject of the above-cited case or a relationship with Kroh Brothers Development Company, it [McMahan] *does not assert a claim to the funds.*" ¶7, Affidavit of Douglas D. Abbey, former director and treasurer of McMahan Equity Real Estate Fund–1, Inc. (emphasis added)

**16.** There is a notation on one of the exhibits that would support a conclusion that the funds are actually the property of Kroh Brothers and not McMahan. On Colorado Ex. A, which is a copy of Thomas Wrigley's August 29, 1996, cover letter to the Department of the Treasury, an employee of the Unclaimed Property Division has made a handwritten notation that the "dividends to creditors" referred to in the letter are refunds due to the cancellation of insurance policies. The notation then states that only $100 of any amount due would be refunded to the individual (presumably the insured), and that the company

guaranteeing the contract or premium "gets the remaining amount of money." This notation, while far from persuasive standing on its own, buttresses the Court's conclusion that the money should be paid over to Kroh Brothers, when all the other evidence is considered. One may infer that Kroh Brothers was the company that guaranteed the premium; that would help explain why Kroh Brothers filed the claim in the first place.

**17.** It is Colorado's position that under Colorado law, unclaimed funds do not escheat to the State, but are held in perpetuity by the State. See COLO. REV. STAT. § 38–13–116.5(1)(b) and (d) (2002). The Court discovered recently enacted legislation that changes this statute to allow the use of the principal of the trust for state emergency reserves. See H.B. 02–1442, 2002 COLO. LEGIS. SERV. CH. 198. The impact of this change in the statute is not at issue today, and the Court will accept counsel's statement that the funds in question will not escheat to the State.

han and Kroh Brothers. The McMahan entity has been dissolved and has stipulated to a judgment in this case that it no longer has any interest in the funds. Presumably, if the principals of McMahan believed that they had a valid claim to more than $600,000.00, they would vigorously pursue that claim. They have chosen not to do so, and, to the contrary, have disclaimed all interest in the funds. While that does, indeed, leave Kroh Brothers as the "last man standing," as Colorado argues, the evidence before the Court nevertheless establishes that Kroh Brothers has a sufficient legal or equitable interest in the funds to make those funds a part of the Kroh Brothers bankruptcy estate pursuant to § 541(a) of the Bankruptcy Code, and to require that the funds be turned over to the Plaintiff pursuant to §§ 542(a) and 543(b)(1).

Finally, the Plaintiff requests interest on the funds being held by Colorado. The Court will not order interest to be paid because it is not provided for under Colorado law. According to COLO. REV. STAT. § 38–13–116.5(c), "all interest derived for the deposit and investment of moneys in the trust fund shall be credited to the CoverColorado cash fund . . . . "

Therefore, it is

**ORDERED** that the Plaintiff, Kroh Operating Limited Partnership, be and is hereby awarded judgment on its Complaint filed herein, and the Defendant, Colorado Department of the Treasury, Unclaimed Property Division, be and is hereby directed to turn over to the Plaintiff the sum of $626,855.87 presently being held by the Defendant.